Filed 7/11/14  In re Catalina C. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CATALINA C., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                    v.<br><br>V.C.,<br><br>        Defendant and Appellant. | F068475<br><br>(Super. Ct. No. 516717)<br><br><br>**O P I N I O N** |

### THE COURT*

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Gomes, J., and Peña, J.

V.C. (mother) appeals from the juvenile court's dispositional order. She challenges the sufficiency of the evidence upon which the juvenile court ordered her eight-year-old daughter, Catalina, removed from her physical custody at the dispositional hearing. (Welf. & Inst. Code, § 361.)[1] Mother contends the dispositional order must be reversed because there was no evidence Catalina was at risk in her care and there were less restrictive alternatives to removal. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

On June 26, 2013, at approximately 11:30 p.m., then seven-year-old Catalina was watching television in the home of her maternal grandmother. Catalina's grandmother and maternal aunt were asleep. Catalina tried to light candles with a childproof lighter and caught her dress on fire. She was transported to a hospital in Sacramento where she was treated for third degree burns over 50 percent of her torso. She had burns on her chest, stomach, upper and lower back, the lower part of both of her arms, the front and back of her legs and the right side of her forehead. Mother was incarcerated at the Public Safety Center, charged with armed robbery, conspiracy and committing a crime while on bail.

At the time of this incident, mother was receiving family maintenance services through the Stanislaus County Community Services Agency (agency). The agency opened her case in October 2012 after mother's former partner bit mother's ear, choked her and beat her up. She also picked Catalina up and threw her on top of mother. Before that, the agency received reports over the years beginning in 2008 that mother hit Catalina. In 2009, mother disclosed to a mandated reporter that she was overwhelmed and having suicidal and homicidal thoughts. She said she was sick and tired of dealing with then three-year-old Catalina. A friend of mother's reported that mother hit Catalina

---

[1] All further statutory references are to the Welfare and Institutions Code.

in the face with a closed fist. In 2010, someone reported seeing mother beating Catalina. In 2011, Catalina began to report her own abuse. She said mother hit her, pulled her hair and "busted" her lip causing it to bleed. She also said mother hit her with a piece of wood she kept on a shelf and threatened to cut off her hair or shave her head. In 2013, Catalina stated that mother slapped her when mother got mad, sometimes so hard that her nose bled.

The juvenile court ordered Catalina detained pursuant to a dependency petition and set a jurisdictional/dispositional hearing (combined hearing).

The agency recommended the juvenile court remove Catalina from mother's custody and provide mother reunification services. The agency believed removal was necessary for several reasons. Mother had untreated mental health problems and unresolved domestic violence and substance abuse issues and displayed anger and frustration in parenting Catalina. As an example, in December 2012, mother was stressed and struck Catalina in the face causing her to bleed. More currently, the hospital staff had to redirect mother to speak more positively to Catalina. The agency was also concerned that mother may not be able to provide Catalina the specialized aftercare she would need once released from the hospital. Catalina was still undergoing skin graft surgeries and receiving physical therapy and occupational therapy. Further, there was no assurance mother would be available to care for Catalina because of her criminal proceedings.

In October 2013, the juvenile court conducted a contested combined hearing. Mother testified that she spent approximately 80 percent of her time with Catalina at the hospital. If she was not there, the maternal grandmother was. She said she wanted Catalina released to her custody but did not as yet have housing. She was staying with family and Catalina could stay there with her. Mother testified that she assisted the nurse in changing Catalina's wound dressing and sat in on her physical therapy when allowed.

3

Mother further testified she was seeing a therapist and a domestic violence specialist. She was scheduled to see a psychiatrist in November and had not been prescribed medication. She completed a substance abuse assessment and was told to focus on her mental health needs first. She said alcohol was her substance of choice and she had been abstinent for approximately seven months. She said Catalina would be moved to the fifth floor of the hospital, which was an apartment-type floor in order to transition Catalina into a living situation.

On cross-examination, mother admitted smacking Catalina and causing her nose to bleed but denied giving her a black eye or busting her lip. She also admitted hitting Catalina with a wooden stick on her bottom but denied threatening to shave her head.

Social worker Tara Grubb testified the agency planned to place Catalina in a foster home once she was discharged from the hospital but had not selected a foster placement yet. Grubb did not recommend returning Catalina to mother's custody in part because mother had not demonstrated that she could successfully complete family maintenance services. In addition, Grubb was concerned that mother struck Catalina when mother felt stressed. Grubb believed Catalina's medical needs would stress mother even more and place Catalina at a high risk for physical abuse.

Placement specialist Rebecca Blacksten testified she spoke with the hospital social worker and Catalina did not have an estimated discharge date. She said the "apartment" mother referred to in her testimony was an intensive outpatient program offered through the occupational therapy program where mother or a foster parent could be housed. The housing was only for one to three weeks.

Blacksten testified her concerns with respect to releasing Catalina to mother's custody were that mother expressed feeling overwhelmed, she couldn't find housing and she had unresolved criminal matters pending. In addition, there was an incident on October 14, 2013, when Catalina was crying and accusing mother of threatening her.

4

Mother's attorney made an offer of proof that if called to testify mother would say that the threat to which Catalina referred was mother having a "post-traumatic stress moment" and threatened to walk out of the room. The juvenile court accepted the offer of proof.

Following argument, the juvenile court struck several of the section 300, subdivision (b) allegations, added two new ones and sustained the petition. The juvenile court ordered Catalina removed, ordered reunification services for mother and set a six-month review hearing. This appeal ensued.

## DISCUSSION

Mother contends the juvenile court erred in ordering Catalina removed from her custody because she demonstrated her commitment to provide Catalina a safe home and because there were alternatives to removal.

"At the dispositional hearing, … there is a statutory presumption that the child will be returned to parental custody." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) In order to remove a child from parental custody, the juvenile court must find by clear and convincing evidence that removal is the only way to protect the physical or emotional well-being of the child. (§ 361, subd. (c)(1).) The juvenile court must also determine if reasonable efforts were made to prevent or eliminate the need for the child's removal. (§ 361, subd. (d).)

Section 361, subdivision (c), the governing statute, provides in relevant part:

> "A dependent child may not be taken from the physical custody of his or her parents … with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence …: [¶] (1) [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody."

5

In determining whether to order a child removed from parental custody, the juvenile court only has to have some reason to believe that circumstances which place the child at a substantial risk of harm would continue in the future. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Thus, the purpose of the removal statute is to avert harm to the child. (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)

"In reviewing the sufficiency of the evidence on appeal, we look to the entire record to determine whether there is substantial evidence to support the findings of the juvenile court. We do not pass judgment on the credibility of witnesses, attempt to resolve conflicts in the evidence, or determine where the weight of the evidence lies. Rather, we draw all reasonable inferences in support of the findings, view the record in the light most favorable to the juvenile court's order, and affirm the order even if there is other evidence that would support a contrary finding. [Citation.] When the [juvenile court] makes findings by the elevated standard of clear and convincing evidence, the substantial evidence test remains the standard of review on appeal. [Citation.] The appellant has the burden of showing that there is no evidence of a sufficiently substantial nature to support the order. [Citations.]" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 915-916.) In our view, mother failed to meet her burden.

In deciding to remove Catalina from mother's custody, the juvenile court focused on two main aspects of the case: mother's inability to control her anger and Catalina's fragile physical and emotional condition. The juvenile court's concern was that if mother was so uncontrolled as to strike Catalina in the face hard enough to draw blood under normal circumstances, she might resort to more drastic measures under the stress of Catalina's increased physical and emotional demands. The juvenile court believed mother needed additional assistance in dealing with her anger and feelings of being overwhelmed before Catalina could be safely returned to her custody. Until that time,

returning Catalina to mother's custody would place Catalina at a substantial risk of harm. We conclude substantial evidence supports such a finding.

We further conclude substantial evidence supports a finding there were no reasonable alternatives to removal. Family maintenance services were not an option given mother's history of noncompliance and the opportunity to live with Catalina in the hospital was only one to three weeks in duration. Thus, it was not a long-term solution.

We conclude substantial evidence supports the juvenile court's order removing Catalina from mother's custody.

## DISPOSITION

We affirm the juvenile court's dispositional order entered on October 25, 2013, removing Catalina from mother's custody.